```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
LIBERTY MUTUAL FIRE INSURANCE                               :
COMPANY,                                                    :
                                    Plaintiff,              :     15 Civ. 3438 (LGS)
                                                            :
              -against-                                     :     OPINION AND ORDER
                                                            :
THE BURLINGTON INSURANCE COMPANY,                           :
                                    Defendant.              :
                                                            :
------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/27/2016
```

LORNA G. SCHOFIELD, District Judge:

This action arises from a dispute between insurers. The parties have each moved for partial summary judgment on a single issue. Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") seeks a ruling that New York law governs the insurance policy issued by Defendant The Burlington Insurance Company ("Burlington" and the "Burlington Policy"). Burlington seeks a ruling that New Jersey law governs the policy. The choice of law ruling appears to be determinative of the threshold issue whether the entities at issue are insureds under the Burlington Policy. For the following reasons, New Jersey law governs. Liberty Mutual's motion for partial summary judgment is denied and Burlington's motion for partial summary judgment is granted.

## BACKGROUND

The following facts are taken from the parties' submissions on this motion are undisputed.

### A.  The Parties

Liberty Mutual is a stock insurance company incorporated in Wisconsin and having its principal place of business in Boston, Massachusetts. Burlington is a stock insurance company

incorporated in, and having its principal place of business in, North Carolina. Both Plaintiff and Defendant are duly authorized to conduct business in New York.

**B.  The Underlying Personal Injury Action**

The underlying action that gives rise to this coverage dispute arose from an injury that Thomas Heaney sustained on December 4, 2012, while working as an employee of FMB, Inc. ("FMB") at a construction project related to the extension of the number 7 subway line in the borough of Manhattan. Heaney allegedly was injured when the boom lift he was operating at the construction project was hit by a shuttle bus. In addition to suing the owner and the driver of the shuttle bus, Heaney sued the owners of the project -- Metropolitan Transit Authority ("MTA") and the New York City Transit Authority ("NYCTA"). Heaney also sued the project's general contractor, Yonkers Contracting Company, Inc. ("Yonkers"). FMB was a subcontractor of Yonkers, engaged to fabricate and install ornamental steel for the project.

**C.  The Burlington Policy and the Yonkers Subcontract**

Liberty Mutual is the commercial general liability insurer to Yonkers as the first-named insured, and also insures MTA and NYCTA. Liberty Mutual alleges that the coverage provided by Liberty Mutual to Yonkers, MTA and NYCTA is excess to the coverage provided by the Burlington Policy. In this action, Liberty Mutual seeks a declaration that Burlington is required to provide insurance coverage for MTA, NYCTA and Yonkers in the underlying action and that such coverage is primary before the Liberty Mutual coverage. Liberty Mutual also seeks money damages to reimburse it for the costs to defend MTA, NYCTA and Yonkers in the underlying action.

Burlington issued the Burlington Policy, a Commercial General Liability policy, for the policy period May 13, 2012 to May 13, 2013, to FMB as the first named insured. The

Burlington policy has a per occurrence limit of $1 million and a general aggregate limit of $2 million.

FMB obtained the Burlington Policy through a New Jersey retail insurance broker, and pursuant to the New Jersey Surplus Lines Law.  The policy contains a New Jersey policyholder notice, which states, "This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. . . . The insurer has been approved by the Department as an eligible surplus lines insurer but the policy is not covered by the New Jersey Insurance Guaranty Fund . . .."  The Burlington policy excludes coverage for bodily injury and property damage liability arising from projects where the project owner, manager or contractor provides a consolidated insurance program, or wrap-up insurance program.  The premium for the Burlington Policy was calculated based on FMB's gross revenues, but this calculation excluded revenues earned from projects covered by the so-called "wrap-up exclusion."

The Burlington Policy contains an endorsement entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization," which includes as an additional insured:

> Any person or organization for whom [FMB is] performing operations, but only if [FMB and the person or organization] have agreed, in a written contract, to add such person or organization as an additional insured on [the Burlington Policy] for that location or part thereof, provided such a written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.

The endorsement limits coverage for these additional insureds to liability for bodily injury, property damage or personal and advertising injury that is caused, in whole or in part, by FMB's acts or omissions or the acts or omissions of those acting on FMB's behalf.

The contract between Yonkers and FMB (the "Yonkers Subcontract") requires FMB to maintain general liability insurance from a carrier authorized to do business in New York with an aggregate and per occurrence limit, per project, of at least $5,000,000 for bodily injury, personal injury and property damage.  The Yonkers Subcontract requires FMB to obtain endorsements to its primary, excess liability and automobile liability insurance policy naming as additional insureds Yonkers, NYCTA and MTA, among others.  The Yonkers Subcontract contains a choice-of-law provision, which states that "the rights of the parties [Yonkers and FMB] shall be construed pursuant to the laws of the State of New York" and that "the venue of any action . . . shall be exclusively in the Supreme Court of the State of New York, County of Westchester . . .."  The Yonkers Subcontract was executed on November 18, 2010.

### D.  FMB

FMB, the primary insured on the Burlington Policy, is domiciled in Harrison, New Jersey, and operates principally in New Jersey and New York.  An FMB application for renewal of general liability coverage, dated May 7, 2013, lists two locations for FMB -- its facility in Harrison, New Jersey, and "Various Jobsites" in New York.  On its supplemental application to obtain the Burlington Policy, FMB stated that it operates and is licensed to operate in New York, New Jersey and Pennsylvania.

According to a 2012 insurance audit for the 2011-2012 policy period, FMB is a contractor "involved with fabrication and installation of metal railings and other decorative, non-structural steel products for commercial properties. . . .  The insured has a fabrication shop and storage yard for the metal products located in . . . Harrison, New Jersey. . . . The insured has sixteen workers . . . that are involved with duties related to the fabrication of the iron railings; which includes such tasks . . . as weld cutting, twisting, bending and crimping the unfinished

4

metal . . . .  The insured employs sixteen workers that are involved with . . . clerical office duties" in New Jersey, but they are "physically separated from the fabrication shop."

For the one-year audit period, "the insured served as a subcontractor for seventeen Wrap-up projects."  The audit lists the projects, all of which are located in New York, and are covered by different policies.  "There [are] forty-four workers . . . involved with installation and truck delivery of fabricated iron railing products.  The workers will use welding torches, power saws, and all appropriate hand tools needed to perform the installation and fabrication work."  FMB entered into 44 contracts during 2012 to 2014.  Of these, two were projects in New Jersey and the remaining projects were in New York.  The New York contracts accounted for 98% of the contracts' dollar value.

### The Instant Action

Liberty Mutual sought additional insured coverage for its insureds from Burlington under the Burlington Policy issued to FMB.  Burlington replied and denied that Yonkers, MTA and NYCTA are additional insureds under the terms of the Burlington Policy for two reasons -- first, that the liability would need to arise from FMB's acts or omissions to qualify those entities as additional insureds; and second, that only Yonkers (and not MTA and NYCTA) could qualify as an additional insured because it had contracted with FMB.  It is undisputed that Mr. Heaney's accident did not arise from FMB's acts or omissions.  This action to recover Liberty Mutual's costs of defending Yonkers, MTA and NYCTA followed.

## STANDARD

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to choice of law is a question of law, rather than fact.  *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620,641 (2d Cir. 2016) ("We review the district court's choice of law *de novo*.").

## DISCUSSION

When sitting in diversity, a federal district court must apply the choice of law rules of the forum state.  *Id.*  This Court applies New York choice of law principles to the instant case.

### A.  No Applicable Contractual Choice of Law Provision

In a case involving the interpretation of contracts, the first step of the choice of law analysis is to determine whether the pertinent contracts contain applicable choice of law provisions.  "A basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent," and therefore courts in New York "will enforce a choice-of-law clause so long as the chosen law bears a reasonable relation to the parties or the transaction."  *Id.* (quoting *Weisbach Elec. Corp. v. MasTec N. Am. Inc.*, 7 N.Y.3d 624, 859 N.E.2d 498, 500 (2006)).

The Yonkers Subcontract contains a provision that requires the "rights of the parties," Yonkers and FMB to be construed according to New York law.  A threshold question is whether the choice of law provision in the Yonkers Subcontract, between FBM and Yonkers, affects the choice of law for interpreting the Burlington Policy, between FBM and Burlington.  The answer is no, because even though FMB is a party to both contracts, the plain language of the choice of law provision in the Yonkers subcontract limits its scope to the parties to that contract.  Burlington is not a party to that contract.  "Under New York contract jurisprudence, the intent of

the parties controls and if an agreement is 'complete, clear and unambiguous on its face[,] [it] must be enforced according to the plain meaning of its terms.'" *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 157 (2015) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)).

The Burlington Policy does not contain a choice of law provision. Nothing in the Burlington Policy suggests that the parties to that agreement (Burlington and FMB) intended to adopt the New York choice of law provision in the Yonkers Subcontract. The Burlington Policy does not implicitly or explicitly incorporate that or any other term of the Yonkers Subcontract. Under New York law, "a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quoting *Jones v. Cunard S.S. Co.*, 238 A.D. 172, 173 (2d Dep't 1933)). Only the additional insured endorsement in the Burlington Policy contains even an implicit reference to the Yonkers Subcontract, and does so only to limit who may qualify as an additional insured. ("Any person or organization for whom you are performing operations, but only if you have agreed, in a written contract, to add such person or organization as an additional insured . . . ") This reference is too attenuated to incorporate the terms of the Yonkers Subcontract into the Burlington Policy. Consequently, no contractual choice of law provision governs the Burlington Policy.

**B. New Jersey and New York Law Conflict**

In the absence of an applicable choice of law clause, New York choice of law rules require a two-step inquiry to determine whether New York or New Jersey law applies. The first step of this inquiry is to determine whether the laws of the two implicated jurisdictions are in conflict. *Fireman's Fund Ins. Co.*, 822 F.3d at 641 (citing *In re Allstate Ins. Co. (Stolarz)*, 81

N.Y.2d 219, 613 N.E.2d 936, 937 (1993)).  If the laws of New York and New Jersey are in conflict on this issue, New York choice of law rules applies the "center of gravity" theory to determine which jurisdiction's law applies.  *Id.* (citing *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 947 N.E.2d 1174, 1179 (2011)).

The law of New York and the law of New Jersey are in conflict with regard to the interpretation of an additional insured provision, such as the endorsement to the Burlington Policy at issue in this action.  New Jersey construes language such as the language in the Burlington Policy endorsement narrowly, as limiting additional insured coverage to claims where the policy holder is at fault.  *See Schafer v. Paragon Custom Bldg., Inc.*, 2010 WL 624108, at *2 (N.J. App. Div. Feb. 24, 2010) (holding that language substantially identical to Burlington Policy endorsement limits coverage to liability caused by acts or omissions of policyholder).

In contrast, recent panels of the First Department of the New York Supreme Court, Appellate Division, have held that such language limits coverage only to liability "arising out of" the policyholder's acts or omissions.  In *National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473 (1st Dep't 2013), the First Department held that the phrase "caused by" does not materially differ from "arises out of," and "focuses not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained."  103 A.D.3d at 474.  The First Department therefore held that the condition in the additional insured endorsement was satisfied as a matter of law when "the underlying personal injury action arose out of an accident that occurred while Draper was acting on behalf of [the insured] in the performance of its ongoing operations."  *Id.*; *accord, e.g.*, *Burlington Ins. Co. v. NYC Transit Auth.*, 132 A.D.3d 127, 138, 14 N.Y.S.3d 377, 385 (N.Y. App. Div. 2015), *leave to appeal dismissed*, 27 N.Y.3d 1027, 33 N.Y.S.3d 861 (2016), and *leave to appeal granted*, 27

N.Y.3d 905 (2016); *Kel–Mar Designs, Inc. v. Harleysville Ins. Co. of N.Y.*, 127 A.D.3d 662, 8 N.Y.S.3d 304 (1st Dept.2015); *Pearson Capital Partners LLC v. James River Ins. Co.*, No. 14 Civ. 4664, 2015 WL 9450632, at *13  (S.D.N.Y. Aug. 28 2015).

Based on this precedent, New York and New Jersey law materially differ as to whether a policyholder must be at fault in order for additional insureds to be covered under language such as that contained in the Burlington Policy endorsement.  Here FMB is the policyholder, and there is no suggestion that it was at fault.  Consequently, the conflict between New Jersey and New York law affects the issue of whether Burlington has any liability for coverage.  This actual conflict necessitates an analysis of the "center of gravity" to determine whether New York or New Jersey law applies to the construction of the Burlington Policy and the scope of coverage.

### C.  Center of Gravity

The "center of gravity" choice of law approach, as applied in New York, provides "the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." *Fireman's Fund. Ins. Co.*¸ 822 F.3d at 641(citing *In re Liquidation of Midland Ins. Co.*, 947 N.E.2d at 1179).  This analysis requires consideration of the spectrum of significant contacts in a given dispute, rather than relying on a "single possibly fortuitous event" to determine which jurisdiction's law governs a particular dispute.  *Id.* (citing *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d at 937).

"Where the insured risk is scattered throughout multiple states, [New York] courts deem the risk to be located principally in one state, namely, in the state of the insured's domicile at the time the policy was issued."  *Id.* at 642.  Because "the state of the insured's domicile is a fact known to the parties at the time of contracting, and . . . application of the law of that state is most

9

likely to conform to their expectations," New York courts have held "the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk." *Id.* (citing *Certain Underwriters at Lloyd's v. Foster Wheel Corp.*, 36 A.D.3d 17 (1st Dep't 2006)).

The relevant insured in this action is FMB, which is domiciled in New Jersey. The Burlington Policy is a general liability policy, and the insured risk is divided between two states: New Jersey, where FMB is located and fabricates its metal products; and New York, where FMB principally installs them (although a small percentage of its projects are in New Jersey). Where an insured risk is scattered across multiple states, the insured's domicile is dispositive of the choice of law analysis. *Id.* at 644 ("[U]nder New York law, the law of [the insured's] domicile governs the EPI Policy since the policy covers risks spread across multiple states."). Here, although the risk is not "scattered," it is divided between two states. Under the principles of *Fireman's Fund*, New Jersey law applies.

Liberty Mutual's argument that the "center of gravity" favors the application of New York law is unavailing even if the domicile state does not dispose of the issue. The issue is not what law applies to the underlying accident, rather what law applies to the Burlington Policy in determining the scope of coverage of that policy. Weighing the contacts, the center of gravity still favors New Jersey. The policy was issued in New Jersey where the policyholder (FMB) and its insurance broker are located. Burlington's New Jersey broker negotiated the policy on FMB's behalf with the representative of the insurer, RT Specialty, which is located in Illinois. The insurer Burlington is domiciled in North Carolina.

Not only is FMB domiciled in New Jersey, but a substantial portion of the insured risk is located there. All of FMB's work consists of a fabrication phase which takes place entirely in New Jersey, and an installation phase, which typically (and in this case) takes place in New

York.  Consequently, all of FMB's contracts, including those for New York projects, have a significant New Jersey component.  The cases upon which Liberty Mutual relies are inapposite.  They deal with New York contacts established via construction projects in New York without the additional factor of work done in other jurisdictions.[1]  The contracts at issue in those cases are for services rendered in New York and lack a factor analogous to FMB's New Jersey-based fabrication work.  Here the center of gravity of the Burlington Policy is New Jersey and favors the application of New Jersey law.

**CONCLUSION**

For the foregoing reasons, Burlington's motion for partial summary judgment is GRANTED, and Liberty Mutual's motion for partial summary judgment is DENIED.  Liberty Mutual's motion for oral argument is DENIED as moot.  The Clerk of Court is respectfully directed to close the motions at Docket Nos. 33, 38 and 46.

Dated: July 27, 2016
       New York, New York

                                              _____
                                              **LORNA G. SCHOFIELD**
                                              **UNITED STATES DISTRICT JUDGE**

---

[1] *See, e.g.*, *Davis & Partners, LLC v. QBE Ins. Corp.*, 113 A.D.3d 544 (1st Dep't 2014) (applying New York law where project in question was located in New York without mention of any out-of-state component); *Illinois Nat'l Ins. Co. v. Zurich Am. Ins. Co.*, 107 A.D.3d 608 (1st Dep't 2013) (affirming application of New York law where relevant subcontract "involved construction services at a site located in New York"); *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 40 A.D.3d 423 (1st Dep't 2007), *rev'd on other grounds* 10 N.Y.3d 411 (2008) (same); *Atlantic Gen. Contr., Inc. v. United States Liab. Ins. Grp.*, 24 A.D.3d 480 (2d Dep't 2005) (same).